**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JOHN VASSAR**, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION** and **NORTHWESTERN UNIVERSITY,**<br><br>    Defendants. | Case No. 1:16-CV-10590<br><br>Judge Andrea Wood<br><br>Magistrate Judge Michael T. Mason |

**DEFENDANT NORTHWESTERN UNIVERSITY'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE
ALLEGATIONS REGARDING SETTLEMENT
DISCUSSIONS FROM PLAINTIFF'S COMPLAINT**

Defendant Northwestern University ("Northwestern") respectfully submits this Memorandum in Support of its motion to strike allegations regarding settlement discussions from Plaintiff John Vassar's ("Plaintiff's") Class Action Complaint ("Complaint").[1]

## INTRODUCTION

Plaintiff, a current student at Northwestern, initially enrolled at Northwestern to play basketball as a student-athlete with an athletic scholarship that covered the full cost of his tuition, fees, room, board and books. Shortly after the end of his freshman basketball season, Plaintiff publicly announced that he would be transferring to another school after his freshman year. Plaintiff then began exploring other schools, and no longer was participating as a member of the Northwestern men's basketball team. Yet, as the beginning of his sophomore year approached, Plaintiff had not transferred. Nonetheless, Northwestern agreed to continue providing Plaintiff with a non-participant athletic scholarship that covered the full cost of his tuition, fees, room, board and books. In exchange, Plaintiff agreed to (among other things) work for Northwestern's Athletics Department.

After Plaintiff later complained about the work he was assigned and was unhappy that Northwestern did not reassign him, Plaintiff's attorney contacted attorneys at Northwestern, and they attempted to resolve the dispute and any resulting impact on Plaintiff's scholarship status. Plaintiff now improperly describes those confidential settlement discussions throughout the Complaint, in a clear attempt to prejudice Northwestern as he asserts his legal claims.

---

[1] Northwestern also has moved this Court to dismiss all of Plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

For the reasons set forth below, the Court should strike the allegations in the Complaint that disclose confidential settlement discussions, including but not limited to Paragraphs 5, 42 n.8, 50-56 and 60 of the Complaint, pursuant to Fed. R. Civ. 12(f). Not only does Plaintiff's inclusion of those allegations in his Complaint reflect an egregious attempt to prejudice Northwestern in this case, allowing Plaintiff's allegations to stand would seriously undermine the longstanding policy of promoting of settlement discussions between parties in a dispute.

## RELEVANT FACTUAL ALLEGATIONS[2]

In April 2014, Plaintiff accepted Northwestern's offer to enroll at Northwestern, a nationally acclaimed university, as a freshman student-athlete with its men's basketball program. Cmplt. ¶¶ 10, 16. Initially, Plaintiff and his mother signed an agreement stating that Plaintiff would receive a four-year scholarship from Northwestern, under which Northwestern would pay for Plaintiff's "tuition, fees, room, board and books" for four years.[3] *See id.* ¶¶ 23-26. After a freshman basketball season in which Plaintiff earned little playing time, he announced that he would be transferring to another school. *Id.* ¶¶ 54 n.10. Plaintiff did not transfer but instead signed a new written "Non-Participant Scholarship Status" agreement (the "Non-Participant Agreement") so that Plaintiff could continue receiving his athletic scholarship even though he was not continuing as a member of the Northwestern men's basketball team.[4] *Id.* ¶ 43. Under

---

[2] For the avoidance of doubt, Northwestern does not admit or otherwise concede any of the allegations cited or referred to herein, and assumes such allegations to be true solely for purposes of this motion to strike. Northwestern reserves all rights, arguments and defenses with respect to such allegations.

[3] A copy of this agreement is attached to Northwestern's Memorandum in Support of its Motion to Dismiss All of Plaintiff's Claims Against It as Exhibit A thereto.

[4] A copy of this agreement is attached to Northwestern's Memorandum in Support of its Motion to Dismiss All of Plaintiff's Claims Against It as Exhibit B thereto.

the terms of the Non-Participant Agreement, Plaintiff was required to work eight hours per week in the Northwestern Athletics Department in order to maintain his full scholarship. *Id.* ¶ 43.

To fulfill his weekly work requirement under the Non-Participant Agreement, Plaintiff was assigned to the Northwestern Athletics Facilities department, which is responsible for (among other things) maintenance of Northwestern's athletic facilities. Unhappy with his assignment, Plaintiff "repeatedly sought assistance" (*i.e.*, complained) to various individuals at Northwestern, seeking to be reassigned. *Id.* ¶¶ 48, 49.

Dissatisfied with Northwestern's response, in January 2016, Plaintiff's attorney contacted Northwestern's Office of General Counsel about Plaintiff's work assignment and his athletic scholarship. *Id.* ¶¶ 11, 50-56. As Plaintiff's Complaint improperly discloses, Plaintiff's attorney and attorneys for Northwestern engaged in various settlement discussions in an effort to resolve Plaintiff's dispute about his work assignment and scholarship status in a manner that would allow Plaintiff to complete his education at Northwestern with the same financial support Northwestern was then providing (and continues to provide), without having any obligation to work for the Athletics Department. *Id.* ¶¶ 11, 51-56.

Plaintiff has included in his Complaint detailed allegations of the terms of alleged settlement proposals, a proposed settlement agreement and the negotiations surrounding those proposals. *See, e.g.*, ¶¶ 5, 42 n.8, 50-56, 60.

## ARGUMENT

### I. THE COURT SHOULD STRIKE THE ALLEGATIONS FROM PLAINTIFF'S COMPLAINT REGARDING CONFIDENTIAL SETTLEMENT DISCUSSIONS BETWEEN PLAINTIFF AND NORTHWESTERN.

Northwestern has filed, contemporaneously with this Motion, a motion to dismiss all of Plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim

("Motion to Dismiss"). In the event that the Court does not grant Northwestern's Motion to Dismiss in its entirety and with prejudice, Northwestern respectfully requests, pursuant to Fed. R. Civ. P. 12(f), that the Court strike the allegations in Plaintiff's Complaint that disclose the details of settlement discussions and negotiations between Plaintiff and Northwestern, including but not limited to Paragraphs 5, 42 n.8, 50-56 and 60 of the Complaint.

Fed. R. Civ. P. 12(f) permits the Court to strike from a complaint any "redundant, immaterial, impertinent, or scandalous matter." Portions of a pleading may be stricken when they are "so unrelated to plaintiff's claims as to be void of merit and unworthy of any consideration" and are "prejudicial to the movant." *Nat'l Org. for Women, Inc. v. Scheidler*, 897 F. Supp. 1047, 1087 n.28 (N.D. Ill. 1995); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y. 1992) ("Settlement discussions are inadmissible to show fault under Fed. R. Evid. 408, and accordingly may be stricken from a complaint as immaterial and potentially prejudicial").

Courts routinely strike portions of complaints that disclose the substance of settlement negotiations because "admitting such statements . . . would undermine the purpose of Federal Rule of Evidence 408: to encourage settlements." *Braman v. Woodfield Gardens Assocs., Realcorp Investors I*, 715 F. Supp. 226, 230 (N.D. Ill. 1989) (striking material from complaint that reflected settlement negotiations); *see also Trading Techs. Intern., Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 WL 3946581, at *2 & n.3 (N.D. Ill. Sept. 2, 2011) (same, and noting that "[t]he risk of chilling settlement negotiations . . . is just as apparent [at the pleading stage] as down the road."); *U.S. ex rel. Alsaker v. CentraCare Health Sys., Inc.*, No. CIV. 99-106, 2002 WL 1285089, at *2 (D. Minn. June 5, 2002) (same); *Kelly*, 145 F.R.D. at 39-40 (same).

Plaintiff's Complaint is replete with allegations concerning confidential settlement discussions between Plaintiff's attorney and attorneys for Northwestern that should be stricken.

4

In particular, Paragraphs 5, 42 n.8, 50–56 and 60 of Plaintiff's Complaint describe in detail various alleged communications between Plaintiff's attorney and Northwestern attorneys in which Plaintiff alleges they were discussing a resolution of Plaintiff's dispute with Northwestern about his work requirement with the Athletics Department and his scholarship status. Plaintiff does not even dispute that the alleged discussions were settlement negotiations. Indeed, his Complaint incorporates lengthy quotes from various alleged settlement communications and otherwise makes explicit allegations about settlement proposals, agreements and surrounding discussions. *See, e.g.,* Cmplt. ¶ 42 n.8 (referring to communications between counsel about the dispute concerning Plaintiff's scholarship status); ¶¶ 5.d, 51-52 (referring to a Northwestern attorney "inquiring into [Plaintiff's] openness" to resolving the dispute and Plaintiff's "reject[ion]" thereof); ¶ 53 (referring to communications between counsel about the dispute and a settlement "proposal"); ¶ 54 (referring to a prior settlement offer and to "resolv[ing]" the dispute); ¶ 55 (referring to "a private settlement agreement"); ¶ 56 (referencing "Northwestern's proposed settlement agreement to resolve the scholarship issue").

Plaintiff includes the detailed allegations about settlement discussions in his Complaint in a clear attempt to prejudice Northwestern and to serve as purported support for the alleged validity of his claims against Northwestern. This Court should not permit those allegations to stand. To do so would seriously undermine the purpose of Fed. R. Evid. 408, would discourage frank and open settlement negotiations when there are disputes, and would be potentially prejudicial to Northwestern. *Braman*, 715 F. Supp. at 230; *Kelly*, 145 F.R.D. at 39-40. For these reasons, the Court should strike all allegations in Plaintiff's Complaint concerning settlement discussions between Plaintiff and Northwestern, including but not limited to those contained in Paragraphs 5, 42 n.8, 50-56 and 60 of Plaintiff's Complaint.

**CONCLUSION**

For the foregoing reasons, Defendant Northwestern University respectfully requests that, in the event that all of Plaintiff's claims in this action are not dismissed in their entirety pursuant to Northwestern's and the NCAA's motions to dismiss, the Court strike the allegations in Plaintiff's Complaint that disclose the details of settlement discussions and negotiations between Plaintiff and Northwestern (including but not limited to those contained in Paragraphs 5, 42 n.8, 50-56 and 60). Northwestern further requests that this Court grant Northwestern any such additional and further relief as the Court deems appropriate.[5]

Dated: January 31, 2017

Respectfully submitted,

**DEFENDANT NORTHWESTERN UNIVERSITY**

*s/ Ami N. Wynne*
One of Its Attorneys

Ami N. Wynne
awynne@sidley.com
Jason G. Marsico
jmarsico@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

---

[5] Defendant National Collegiate Athletic Association has moved this Court to dismiss Count I of Plaintiff's Complaint under the Sherman Act. If the Court grants the NCAA's motion to dismiss but there are remaining claims against Northwestern and the Court does not require Plaintiff to replead as a result, Northwestern respectfully requests that the Court strike all allegations in Plaintiff's Complaint that concern Plaintiff's Sherman Act claim with respect to the NCAA's year-in-residence rule and related putative class allegations. Granting such a motion would not delay any further proceeding but rather would expedite this action by "remov[ing] unnecessary clutter from the case" regarding the Sherman Act claim. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Cholly v. Uptain Grp., Inc.*, No. 15 C 5030, 2015 WL 9315557, at *3–4 (N.D. Ill. Dec. 22, 2015) (granting motion to strike class allegations with respect to claims dismissed pursuant to Rule 12(b)(6)).

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record for the parties:

>Steve W. Berman
>HAGENS BERMAN SOBOL SHAPIRO LLP
>1918 Eighth Avenue, Suite 3300
>Seattle, WA 98101
>steve@hbsslaw.com
>
>Elizabeth A. Fegan
>Daniel J. Kurowski
>HAGENS BERMAN SOBOL SHAPIRO LLP
>455 N. Cityfront Plaza Drive, Suite 2410
>Chicago, IL 60611
>beth@hbsslaw.com
>dank@hbsslaw.com
>
>Catherine Masters
>SCHIFF HARDIN LLP
>233 S. Wacker Drive
>Chicago, Illinois 60606
>cmasters@schiffhardin.com
>
>Gregory L. Curtner
>Robert J .Wierenga
>Suzanne L. Wahl
>SCHIFF HARDIN LLP
>350 S. Main Street, Suite 210
>Ann Arbor, Michigan 48104
>gcurtner@schiffhardin.com
>rwierenga@schiffhardin.com
>swahl@schiffhardin.com

>/s/*Ami N. Wynne*